UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 17, 2020

v.

16-CR-670 (KMW)
**OPINION AND ORDER**

DARLENE DELEON,

        Defendant.
------------------------------------------------------------X

KIMBA M. WOOD, District Judge:

      Defendant Darlene Deleon has moved to reduce her term of imprisonment under the federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). She argues that if she were to contract COVID-19 while incarcerated, she would face a heightened risk of suffering life-threatening illness because of her underlying health conditions. (ECF No. 299.) The Government opposes her motion. For the reasons set forth below, the Court GRANTS Defendant's motion and orders her immediate release from prison. Defendant's sentence is reduced to time served. She shall abide by all the terms and conditions of supervised release that were imposed at her original sentencing and that are memorialized in her judgment of conviction. (ECF No. 238.)

## BACKGROUND

      On January 28, 2018, Defendant pleaded guilty to one count of conspiracy to commit sex trafficking of minors, in violation of 18 U.S.C. § 371. (Judgment, ECF No. 238.) Specifically, in May of 2015, she began allowing her co-defendant Maria Almonte to live in her apartment in

exchange for approximately $300 per month in food stamps. (Plea Tr. at 19-20, ECF No. 173.) Defendant came to learn that Ms. Almonte was using the apartment to carry on a prostitution business involving Ms. Almonte's minor sister, among others. (*Id.* at 20.) Approximately four or five months later, Defendant, fearful of losing custody of her children, ordered Ms. Almonte, Ms. Almonte's sister, and the others involved in the prostitution business to leave her apartment. (*Id.*)

On September 12, 2018, the Court sentenced Defendant to sixty months' imprisonment, to be followed by twenty-four months of supervised release. (Sentencing Tr. at 19, ECF No. 244.) At sentencing, the Court found that Defendant was "a good candidate for voluntary surrender" and set her surrender date eight months in the future to allow her additional time to breastfeed and bond with her infant child. (*Id.* at 20-21.) Defendant surrendered as ordered on May 14, 2019.

At the time of her surrender, Defendant was recovering from bariatric surgery and designated to FCI Carswell, a facility in Texas for women with special medical needs. (Def. Mot. at 2.) She is currently incarcerated at FCI Hazelton. Defendant has served roughly one year—or twenty percent—of the total term of incarceration imposed at sentencing.

On April 16, 2020, Defendant, through counsel, submitted an application for compassionate release to the Warden of FCI Hazelton, where Defendant resides. (Def. Mot. at Ex. A, ECF No. 299.) The Warden acknowledged receipt of the application the following day. (*Id.* at Ex. B.) The present motion followed on April 24, 2020.

On April 29, 2020, Defendant received the Warden's denial of her application for compassionate release. However, she had no access to outside communication and was unable to

inform her attorney of this development until May 11, 2020.  (Def. Supp. at 1, ECF No. 304.) Her attorney updated the Court on May 12, 2020.  (*Id.*)

## LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant.  A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[1]  *Id.*

A court may reduce a defendant's sentence if the court finds that "extraordinary and compelling reasons warrant such a reduction," and "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  *Id.* § 3582(c)(1)(A)(i).  In making this determination, the court must consider the "the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable."  *Id.* § 3582(c)(1)(A).

Congress delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction."  28 U.S.C. § 994(t)).  The Sentencing Commission has determined that a defendant's circumstances meet this standard when, *inter alia*, the defendant is "suffering from a terminal illness" or a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons."

---

[1] Defendant's motion is properly before the Court because 30 days have elapsed since the date of Defendant's request to the Warden.

U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A), (D).  Following the passage of the First Step Act, courts may independently determine whether such "other reasons" are present in a given case, without deference to the BOP's judgment.  *See United States v. Lisi*, No. 15-CR-457, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) (Failla, J.).

In addition, the Sentencing Commission has resolved that a court should reduce a defendant's sentence only after determining that "[t]he defendant is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

## DISCUSSION

A. <u>Extraordinary and Compelling Circumstances</u>

COVID-19 presents increased risks in prison settings, where it is difficult to practice consistent social distancing, to maintain strict hygiene, and to take other preventative cautions.  As of May 11, 2020, the top three clusters of COVID-19 cases in the United States—and ten of the top fifteen—were connected to prisons and jails. [2]  Tellingly, mass testing, in the few correctional facilities that have undertaken it, revealed vast hidden asymptomatic outbreaks.[3]

Currently, there are no reported cases of COVID-19 at FCI Hazelton.  But according to the Government, just one inmate has been tested.  (Gov. Opp'n at 6, ECF No. 302.)  The BOP tests inmates only if they have a fever over 100 degrees and are exhibiting signs of COVID-19 such as cough, sore throat, or shortness of breath.  (*Id.*)  Defendant is housed with approximately 500 other women.  (*Id.*)  The lack of reported cases might indicate that the BOP's "protocols have been sufficient to prevent an outbreak," or it might "be explained by a lack of routine

---

[2] *See Coronavirus in the U.S.: Latest Map and Case Count*, NEW YORK TIMES, at https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last accessed May 15, 2020).
[3] Linda So & Grant Smith, *In Four U.S. State Prisons, Nearly 3,300 Inmates Test Positive for Coronavirus -- 96% Without Symptoms*, REUTERS (April 25, 2020), available at https://www.reuters.com/article/us-health-coronavirus-prisons-testing-in/in-four-u-s-state-prisons-nearly-3300-inmates-test-positive-for-coronavirus-96-without-symptoms-idUSKCN2270RX.

testing and asymptomatic transmission." *United States v. Daugerdas*, No. 09-cr-581, 2020 U.S. Dist. LEXIS 77658, at *8 (S.D.N.Y. May 1, 2020) (Pauley, J.); *see United States v. Asaro*, No. 17-cr-127, 2020 U.S. Dist. LEXIS 68044, at *7-9 (E.D.N.Y. Apr. 17, 2020) (Ross, J.) (Granting compassionate release to a medically vulnerable inmate residing in a facility with no known COVID-19 cases, noting that "absent more information about how much testing the BOP is conducting, it is possible that undetected cases are present in the facility."). FCI Gilmer, another BOP facility in West Virginia, had no reported cases when Defendant filed her current motion; now it has five.[4] The Court understands that asymptomatic transmission may be occurring without the BOP's knowledge at FCI Hazelton, and that detectable symptoms may strike first among those with compromised immune systems and other medical vulnerabilities.

Defendant is one such inmate with a compromised immune system and other medical vulnerabilities. Her diagnosed health conditions include acute asthma, diabetes, hypertension, pericarditis, susceptibility to viruses such as shingles, and anxiety-panic disorder. (Def. Mot. at 2.) At the time of sentencing, Defendant had recently undergone bariatric surgery to address morbid obesity. (*Id.*) She was also recovering from a pericarditis surgery that failed to remove a build-up of excess fluid around her heart and lungs. (*Id.*) Recent medical records show that Defendant has been using an asthma pump twice daily because of difficulty breathing, that she remains obese, and that she is anemic. (Def. Reply at 1, ECF No. 303.) Last month, she was on a "sick call" with chest pain and dizziness. (*Id.*) There can be no doubt that Defendant's medical conditions place her in the category of high-risk individuals for whom infection with COVID-19 is potentially lethal.[5] Indeed, "[t]he Government recognizes that the defendant's

---

[4] Covid-19 Cases, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed May 15, 2020).
[5] *See* CDC: COVID-19: What if You are High Risk, available at https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html (last accessed May 15, 2020)

5

asthma and history of cardiac conditions likely place her at higher risk of developing serious complications should she contract COVID-19." (Gov. Opp'n at 7.)

The Court finds that the COVID-19 pandemic, the conditions of incarceration that diminish Defendant's ability to protect herself from exposure, and Defendant's serious underlying health challenges, in combination, give rise to "extraordinary and compelling reasons" for reducing her sentence.

B. The Section 3553(a) Factors

The sentencing factors set forth in 18 U.S.C. § 3553(a) weigh in favor of granting Defendant compassionate release. As the Court explained at sentencing, "the seriousness of Defendant's offense is obvious." (Sentencing Tr. at 17.) But under the circumstances, releasing Defendant early would not materially undermine the goals of just punishment and general deterrence, particularly when balanced against the significant risk to Defendant if she were infected.

The Court finds that Defendant poses no danger to the community and that continued incarceration is not necessary to effectuate specific deterrence. As the Government acknowledges, Defendant has no criminal history, a "relatively low risk of recidivism," and "has not incurred any discipline during her incarceration." (Gov. Opp'n at 7.) She self-surrendered eight months after her sentencing without incident. Moreover, Defendant will be subject to strict probationary constraints for two years upon her release. And as a result of her conviction, Defendant is required to register as a sex offender and to comply with the extensive reporting requirements under the Sex Offender Registration and Notification Act (SORNA). (Sentencing Tr. at 25.)

The Court stated at sentencing, and maintains the belief, that Defendant's "character is good apart from the crime here." (*Id.* at 19.) Defendant's work history shows admirable ethic and diligence. She is also a devoted parent. The Court gave her "credit for the work [she had] done and for [her] good mothering" at sentencing. (*Id.* at 18.)

In light of Defendant's extensive health challenges and the other considerations addressed here, the Court concludes that the COVID-19 pandemic renders the previously imposed term of incarceration greater than necessary to achieve the purposes of sentencing. Although the Court previously determined that sixty months of imprisonment was appropriate to serve the aim of general deterrence, that same sentence is neither just nor necessary where there is a real risk that it could be transformed into a death sentence. (*Id.* at 19); *see United States v. Field*, No. 18-cr-426, 2020 U.S. Dist. LEXIS 78112, at *6 (S.D.N.Y. May 4, 2020) (Oetken, J.).

## CONCLUSION

For the foregoing reasons, Defendant's motion for a compassionate release under § 3582(c)(1)(A) is GRANTED. Defendant shall be resentenced to time served, and shall be released from the custody of the Bureau of Prisons immediately. Upon release, Defendant shall be placed on supervised release status and shall be for two years subject to all the mandatory conditions, standard conditions, and special conditions of supervised release stated in the original judgment and sentence in this case.

SO ORDERED.

Dated: New York, New York
      May 17, 2020                                                /s/ Kimba M. Wood
                                                                            KIMBA M. WOOD
                                                                      United States District Judge